UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Susan K.,[1]

     Plaintiff,      Case No.  19-cv-1774 (NEB/LIB)

  v.          **REPORT AND RECOMMENDATION**

Andrew Saul,
Commissioner of Social Security,

     Defendant.

---

Plaintiff, Susan K. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 10, 14], and the Court took the matter under advisement on the written submissions.

For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 10], be **DENIED**, and that Defendant's Motion for Summary Judgment, [Docket No. 14], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I. Procedural History

On May 12, 2016, Plaintiff filed a Title II application for a period of disability and disability benefits. (Tr. 10).[2] Plaintiff alleged that her disability began on December 5, 2014. (Tr. 10). The Commissioner initially denied Plaintiff's present claims on August 18, 2016, and again, upon reconsideration, on December 29, 2016. (Tr. 10). On March 2, 2017, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 10).

Administrative Law Judge Micah Pharris (hereinafter "ALJ") conducted a hearing on September 6, 2018, at which Plaintiff was represented by counsel. (Tr. 10). Plaintiff and an independent vocational expert, Cheryl Zilka, (hereinafter "IVE Zilka") testified at the hearing. (Tr.10). On October 2, 2018, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 10–21). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 21).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–6). Subsequently, on May 6, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Accordingly, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On July 5, 2019, Plaintiff filed the present action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 10, 14], and the Court took the matter under advisement on the written submissions.

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 8], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 52 exhibits. (See, Administrative Record [Docket No. 8]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

## II.  Standards of Review

### A.  Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also, Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B.  Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the

Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In the present case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled, (Tr. 1–6), thus making the ALJ's decision the final decision of the Commissioner.

### C.  Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision (through the ALJ), the Court must affirm the decision. <u>Robinson v. Sullivan</u>, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." <u>Id.</u> "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." <u>Medhaug v. Astrue</u>, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. <u>See</u>, 20 C.F.R. § 404.1512(a); <u>Whitman v. Colvin</u>, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. <u>Goff v. Barnhart</u>, 421 F.3d 785, 790 (8th Cir. 2005).

### III. Decision Under Review in the Present Case

Before beginning the five-step disability evaluation process in the present case, the ALJ first determined that Plaintiff met the insured status requirement of Social Security Act through December 31, 2019. (Tr. 12). This finding is not in dispute.

Thereafter, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engage in substantial gainful activity "since December 5, 2014, the alleged onset date." (Tr. 12). This finding is not in dispute. The Court will refer to the period of time between December 5, 2014, and October 2, 2018, the date of the ALJ's decision, as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairment: memory disorder versus amnestic syndrome related to a history of shunted hydrocephalus; major depressive disorder versus adjustment disorder; and lumbar degenerative disc disease (DDD)." (Tr. 12) (citations omitted). Plaintiff does not challenge the finding made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listing 1.04, 12.02, and 12.04. (Tr. 13–15). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination: "claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the individual is limited to simple, routine task," and she "must be shown new job task by demonstration and must be allowed to take notes while leaning new job tasks." (Tr. 15). Plaintiff does challenge this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however," the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with

the medical evidence and other evidence in the record." (Tr. 15). Plaintiff does <u>not</u> specifically challenge this credibility finding by the ALJ.

The ALJ found that Plaintiff was unable to perform her past relevant work. (Tr. 20). Plaintiff does <u>not</u> challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform." (Tr. 20). Relying upon testimony from independent vocational expert, Cheryl Zilka, ("IVE Zilka"), the ALJ specifically found that among the occupations Plaintiff would be able to perform were "cart attendant" of which there are 126,000 positions in the national economy; "laundry laborer" of which there are 35,000 positions in the national economy; and "conveyor feeder operator" of which there are 48,000 positions in the national economy. (Tr. 21). Plaintiff does not directly challenge the ALJ's findings at step five, but she implicitly challenges this finding in as much as it is based on the ALJ's RFC finding which she does directly challenge.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 21).

## IV. Analysis

Plaintiff purports to assert one general overarching issues on her appeal of the ALJ's decision: the ALJ's RFC determination was in error because it was not supported by substantial evidence in the record as a whole. (Plf.'s Mem. [Docket No. 11]; Plf.'s Reply [Docket No. 17]). Plaintiff contends that the ALJ "improperly weighed the evidence of record, relying on selected facts to support a conclusion that is inconsistent with the complete medical record" resulting in "a residual functional capacity determination that is not supported by substantial evidence on the

record as a whole." (Plf.'s Mem., [Docket No. 11], at 1). Plaintiff asserts that "[t]he evidence of record, including objective testing, [her] subjecting complaints and the opinion of Dr. Susan McPherson, support [Plaintiff's] contention that her impairments prevent her from performing competitive employment." (Id. at 12).

The Commissioner contends that he is entitled to summary judgment, arguing that Plaintiff's argument is unavailing, and that the ALJ's opinion is supported by substantial evidence in the record. (Def.'s Mem. [Docket No. 15]).

**A. Substantial Evidence**

As noted above, Plaintiff argues that the record as a whole does not support the ALJ's RFC determination, and therefore, the ALJ's finding of "not disabled" is consequently not support by substantial evidence in the record as a whole. Plaintiff opines that substantial evidence in the record "support[s] [her] contention that her impairments prevent her from performing competitive employment." (Plf.'s Mem., [Docket No. 11], at 12).

Although Plaintiff argues that there is no substantial evidence in the record as a whole to support the ALJ's RFC determination, in support of this argument, Plaintiff only summarizes the portions of the evidence from the record which she believes support a finding of disability. (See, Plf.'s Mem., [Docket No. 11], at 12–19).

To the extent that Plaintiff argues here that there was also substantial evidence in the record that might have supported a finding of disability, the Court may not reverse the ALJ simply because substantial evidence supports an opposite conclusion. See, Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ, see, Woolf, 3 F.3d at 1213, because the Court "must consider evidence that both supports and detracts from the ALJ's decision," and "must affirm the denial of benefits if 'it

8

is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" See, Milam, 794 F.3d at 983 (citations omitted) (emphasis added). Such is the present case now before the Court.

Plaintiff merely highlights selective evidence she believes favorable to her claim, (see, Tr. 13–20), and she asks this Court to reevaluate said evidence to reach a different conclusion than that of the ALJ when he considered the evidence.

Plaintiff's argument lacks any assertion that the ALJ failed to consider the evidence to which Plaintiff now points. Plaintiff merely argues that the ALJ should have reached a different conclusion upon consideration of said evidence. Here, Plaintiff simply asks the Court to reweigh the evidence that the ALJ considered and come to a different conclusion than the ALJ; this the Court cannot do. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213.

To be clear, Plaintiff does not argue that the record as a whole lacks substantial evidence to support the ALJ's RFC finding. Rather, Plaintiff's argument is that there is also substantial evidence in the record that also supports the opposite finding of disability. However, as already noted above, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the decision of the ALJ, then the Court must affirm the decision. See, Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009). Although Plaintiff may perceive evidence in the record which supports a finding in her favor, the record now before the Court when considered as a whole also contains substantial evidence which supports that ALJ's decision, and therefore, the Court must affirm the ALJ's decision. See, Robinson, 956 F.2d at 838; Bradley, 528 F.3d at 1115; Medhaug, 578 F.3d at 813.

Plaintiff also appears to take issue with the ALJ's consideration of the conclusions of Dr. Susan McPherson. (See, Plf.'s Mem., [Docket No. 11], at 12–17). Specifically, in addition to also highlighting the portions of Dr. McPherson's findings which Plaintiff believes supports a disability finding in her favor, Plaintiff also contends that the ALJ improperly "used a statement from Dr. Janene Hawkins, ignor[ing] the context in which the statement was made," to discount the conclusions of Dr. McPherson. (Id.).[3]

The record now before the Court demonstrates that after Plaintiff began reporting memory problems, she was referred to Dr. Susan McPherson, Ph.D., ABPP/CN, LP, a Board Certified Clinical Neuropsychology Licensed Psychologist, for a neuropsychological evaluation. (Tr. 320–325). Plaintiff presented for her evaluation on April 14, 2016. (Tr. 320).

At the consultation, Plaintiff was administered a number of neuropsychological tests. (Tr. 322). In her report, Dr. McPherson noted that Plaintiff's effort on the tests was "within normal limits on all measures," and therefore, the test results were "valid" and "considered to be an accurate representation of" Plaintiff's "level of cognitive strengths and weaknesses." (Tr. 322).

Regarding "General Intellectual Functioning," the test results indicated a "low average range for overall level of intellectual functioning" and "low average" in her perceptual reasoning abilities. (Tr. 322). However, the test results indicated average performance or range in verbal comprehension, working memory, verbal ability, general information, expressive word knowledge, and verbal abstract reasoning. (Tr. 322). Plaintiff's test results fell within the low

---

[3] Here, Plaintiff argues that the ALJ improperly discounted the contents of Dr. McPherson's neurological evaluation report. However, to the extent that a liberal reading of Plaintiff's memorandum as a whole could also be construed as arguing the ALJ improperly discounted Dr. McPherson's medical opinion, such an argument would necessarily fail. Dr. McPherson did not offer any medical opinion on the record now before the Court. This is not a circumstance where the ALJ discounted the medical opinion of a treating physician and would therefore be required to provide specific, proper reasons for doing so nor a circumstance where there is a medical opinion which is entitled to some deferential weight. See, gen., Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015). Instead, in the present case, Dr. McPherson's neurological evaluation report contains only the results of the tests administered during the neurological evaluation and Dr. McPherson's interpretation of those test results.

average range for measures of her non-verbal ability, including visual abstract reasoning. (Tr. 322).

Plaintiff's test results related to attention and concentration ranged from severely impaired to average. Specifically, she scored in the average range in the digit span subset and the arithmetic subset, but she "performed in the severely impaired range for speed when asked to quickly connect consecutively numbered circles." (Tr. 323).

Similarly, Plaintiff's performance "on measures of learning and memory ranged from severely impaired to low average." (Tr. 323). Plaintiff's "ability to recall two paragraphs read to her by the examiner, a task similar to the ability to recall conversations, fell in the low average range for immediate" recall "and within the severely impaired range at 20 minutes delayed recall." (Tr. 323). She performed in the severely impaired range on a list learning exercises, and when asked to learn a novel list of words she performed in the low average range. (Tr. 323).

Plaintiff also completed tests related to "Frontal Systems and Executive Functions" in which she performed in the low average range for speed when she made no errors. (Tr. 323). She performed in the moderately impaired range regarding her ability to identify a number of concepts presented to her; however, her letter fluency was average. (Tr. 323).

Based on the results of the testing performed, Dr. McPherson noted that Plaintiff met the criteria for a memory disorder, unspecified "given her impaired performance of measures of new learning and memory." (Tr. 324). Dr. McPhersons also specifically noted that although Plaintiff's spatial abilities fell below average, it was "difficult to determine if her scores represent a change from baseline" because Plaintiff reported lifelong difficulty with special reasoning. (Tr. 324).

On November 10, 2016, as part of the reconsideration of the initial denial of Plaintiff's application for disability, her medical records, including Dr. McPherson's April 14, 2016, evaluation report, were reviewed by state agency consultant, Dr. Mary X. Sullivan, Ph.D. (Tr. 71–72). Dr. Sullivan took issue with several portions of Dr. McPherson's testing evaluation. (Tr. 71–72). For example, Dr. Sullivan noted that Dr. McPherson had failed to consider that Plaintiff performed significantly better on the more difficult Trailmaking Part B portion of a test than she did on the easier tasks in Part A. (Tr. 71). Dr. Sullivan also noted that although Plaintiff ostensibly demonstrated a pattern of memory deficit characterized as "amnesic," that characterization as applied to Plaintiff was "not entirely true, since rate of acquisition/learning on the word-list learning task suggested that low recall was directly related to a low number of words learned over trials." (Tr. 71–72). Dr. Sullivan noted that if Plaintiff "were truly amnestic, she would have learned many more words while retaining few of them." (Tr. 72). Ultimately, Dr. Sullivan opined that Plaintiff was able to "understand, carry out and remember simple instructions; able to make judgments commensurate with functions of unskilled work; able to respond appropriately to brief supervision and interactions with coworkers and work situations;" and "able to deal with changes in a routine work setting." (Tr. 74).

Plaintiff was also referred for evaluation to Dr. Janene Hawkins, Psy.D., L.P., ABPP, who is also "Board Certified in Clinical Neuropsychology." (Tr. 499–506). That evaluation took place on September 12, 2017. (Tr. 499–506). At this evaluation, Plaintiff described "a fairly detailed daily routine for herself including getting up, watching the Today Show, walking from a half mile a day, caring for her mother two days a week (including washing, walking with her and checking on her), looking for a job, and so forth." (Tr. 499). Plaintiff reported that her family paid her to care for her mother, and she also operated a part-time cleaning business within her

condominium. (Tr. 499). Plaintiff was "able to provide fairly detailed news events," and she reported that she continued to drive herself. (Tr. 499).

Dr. Hawkins administered a number of neurological tests to Plaintiff. (Tr. 502–515). Regarding Overall Intellectual Functioning, Dr. Hawkins reported a "stable to improved functioning over the past 17 months." (Tr. 502). In the areas of Visuospatial/Perceptual Organizational Skills, Plaintiff's results were "indicative of improvement." (Tr. 502). In the area of Verbal Learning and Memory, Plaintiff performed poorly; however, Dr. Hawkins specifically questioned the validity of this performance. (Tr. 503). Dr. Hawkins noted that Plaintiff's performance was "inconsistent with her ability to provide current news events, her daily routine, accurate orientation, and so forth." (Tr. 503). Dr. Hawkins further noted that Plaintiff's performance in areas testing Recognition was inconsistent with Plaintiff's "ability to describe daily activities, routine, Orientation, and so forth." (Tr. 503). Dr. Hawkins further described as "unusual" and inconsistent Plaintiff's performance in the areas of Executive/Frontal Lobe Functioning and Psychomotor Skills. (Tr. 504).

Dr. Hawkins reported that there were several "threats to validity" of the evaluation test results based on his observations of Plaintiff. (Tr. 501). Specifically, Dr. Hawkins observed that Plaintiff "was very quick to say 'don't know . . . can't,'" and she performed tasks "very deliberately" when she was specifically asked to perform them quickly. (Tr. 501). Plaintiff also expressed concern that she "would get lost going to the bathroom in the hall one door away, and cheered when she came back after not having become lost." (Tr. 501).

Dr. Hawkins concluded that despite the "threats to validity," she was unable to rule out a true memory impairment, and she would provisionally offer a diagnosis of "amnestic syndrome" similar to the diagnosis of Dr. McPherson. (Tr. 504). However, Dr. Hawkins again specifically

13

noted that the "amnestic syndrome" was "inconsistent with [Plaintiff's] knowledge of recent events, being fully oriented," being "able to care for her mother," and being able to "perform her own finances, and so forth." (Tr. 504–505).

On October 10, 2017, Plaintiff returned to Dr. McPherson for another neuropsychological evaluation. (Tr. 536–541). At this evaluation, Plaintiff reported her memory to be "about the same" with only "'slight' difficulties in recalling conversations" without "any difficulty remembering to pay bills or take medications." (Tr. 536). She reported continuing to work crossword puzzles. (Tr. 537). Plaintiff also reported that she was going to start working "for a company called Synergy, taking care of her own mother." (Tr. 537).

In the area of General Intellectual Functioning, Plaintiff performed in the average range. (Tr. 538). Dr. McPherson noted that Plaintiff's performance was a "significant improvement" in "overall level of processing speed." (Tr. 538). Dr. McPherson also reported "[s]ignificant improvement" in Plaintiff's performance "on simple visual processing" and "mild improvement on vigilance." (Tr. 539). In the area of Learning and Memory, Plaintiff's performance "ranged from severely impaired to average, with the vast majority of scores falling within the severely impaired range." (Tr. 539). Dr. McPherson reported a "[s]ignificant decline" in the "initial recall of stories." (Tr. 539). Dr. McPherson noted "significant improvement" in the area of Frontal Systems and Executive Functions—specifically, the areas of nonverbal abstract reasoning, ability to identify concepts and shift sets—and mild improvement in the area of cognitive flexibly. (Tr. 540).

In the Summary and Recommendations portion of her report, Dr. McPherson noted that Plaintiff "continue[d] to present with significant deficits on measures of memory"; however, she also noted that "when compared with [Plaintiff's] prior evaluation there ha[d] been either stable

performance or mild improvements over the [previous] year in other domains such as abstract reasoning and executive functions." (Tr. 540).

As noted above, Plaintiff asserts that the ALJ took a statement of Dr. Hawkins out of context to discount the diagnostic conclusions of Dr. McPherson. The Court finds this argument unpersuasive because Plaintiff's assertion itself is based on a mischaracterization of the record, including taking portions of the ALJ's decision out of context.

The ALJ found "no more than moderate limitation in understanding, remembering or applying information" in part based on "the obvious inconsistency between tested and functional memory." (Tr. 19). Specifically, the ALJ noted that while "a review of neuropsychological evaluations suggests a worsening of tested memory[,] . . . Dr. Hawkins clearly explained how the tested memory deficits are completely inconsistent with the [Plaintiff's] level of functioning, a contradiction previously ignored by Dr. McPherson." (Tr. 19).

The ALJ's assertion that "Dr. Hawkins clearly explained how the tested memory deficits are completely inconsistent with the [Plaintiff's] level of functioning" does not take any statement of Dr. Hawkins out of context. Rather, as detailed above, Dr. Hawkins' report repeatedly reiterated that Plaintiff's performance on the neuropsychological tests was inconsistent with Plaintiff description of her daily activities, including caring for her mother; her ability to provide news events; and her accurate orientation. (Tr. 502–15). Therefore, the Court finds unpersuasive Plaintiff's argument that the ALJ took portions of Dr. Hawkins' report out of context.

Moreover, despite Plaintiff's argument to the contrary, the record now before the Court does not suggest that the ALJ's reference to "obvious inconsistency between tested and functional memory" was a reference solely to the inconsistencies reported in the report of Dr.

Hawkins. Instead, prior to noting "obvious inconsistency between tested and functional memory" the ALJ extensively discussed various examples of Plaintiff's "functional memory" which exceed the "tested" memory in the psychological evaluations, and throughout his decision, the ALJ noted several times that there are inconsistencies between Plaintiff's own reported functional status and her test results. (Tr. 13–19).

For example, the ALJ noted that despite the neurological evaluation test results, Plaintiff reported driving herself; managing her own finances; being responsible for the care of her mother; being compensated by family to care for her mother; finding employment to pay her for taking care of her mother; living independently; daily activities such as cleaning, laundry, and grocery shopping; advertising her cleaning and errand services within her condominium development; and gaining income by cleaning for other people. (Tr. 14–17). The ALJ also noted that Plaintiff consistently reported a fairly detailed daily routine to medical providers, and medical providers consistently opined that Plaintiff could be responsible for her own finances. (Tr. 14–17). Therefore, the Court finds unpersuasive Plaintiff's assertion that the ALJ's reference to "obvious inconsistency between tested and functional memory" was based <u>solely</u> on the ALJ's reference to Dr. Hawkins' evaluation of Plaintiff.

To the extent Plaintiff asks this Court to reverse the finding of the ALJ by awarding more weight to the findings of Dr. McPherson and discounting the findings of Dr. Hawkins, the Court cannot do so. It is the function of the ALJ alone to weigh conflicting evidence and to resolve disagreements among medical professionals regarding what limitations of work abilities exist due to any particular underlying diagnosis. <u>Kirby v. Astrue</u>, 500 F.3d 705, 709 (8th Cir. 2007). This is exactly the course of action the ALJ took in the present case. The test results and the interpretations thereof of Dr. McPherson and Dr. Hawkins were in conflict, and the ALJ resolved

16

the disagreement between the two on the basis of the record as a whole. This is the function of the ALJ. See, Id.

Moreover, the Court's own review of the record indicates that the ALJ's RFC decision was supported by substantial evidence in the record as a whole. In reviewing whether an ALJ's findings and conclusions were supported by substantial evidence, the Court must search the record for evidence that not only supports but also contradicts the ALJ's findings and conclusions, and it must give that evidence appropriate weight when determining whether the particular finding by the ALJ now being challenged was within the allowable zone of choices. Baldwin v. Barnhart, 349 F.3d 549, 555 (8th Cir. 2003) (citing Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991)).

Reviewing the objective medical evidence in the present record, the ALJ determined that Plaintiff had "no more than moderate limitations in understanding, remembering or applying information" which supported the RFC determination as assessed. As the ALJ noted, Plaintiff has been responsible for the care of her mother for some time, and she has received compensation for that work—first from her family and then from an employer. (Tr. 35–38). Plaintiff testified that, when she was employed by Synergy and paid to take care of her mother, she had to apply for the position, and she underwent "some training." (Tr. 36). Plaintiff reported driving herself; managing her own finances; being responsible for the care of her mother; being compensated by family to care for her mother; finding employment to pay her for taking care of her mother; living independently; daily activities such as cleaning, laundry, and grocery shopping; advertising her errand services in her condominium development; and gaining income by cleaning for other people. (Tr. 14–17). Plaintiff's self-reported activities, especially when considered in conjunction with the medical evidence in the record, are inconsistent with her

complaints of disabling, severe impairments related to her memory, and her own self-reported activities support the RFC determination as assessed by the ALJ.

Moreover, Plaintiff testified that she felt capable of working as a caretaker full time, but she simply could not find available work. (Tr. 39). Plaintiff's own testimony that she was capable of maintaining full time employment as a caretaker is inconsistent with her complaints of severe disabling memory impairments, and it weighs heavily in support of the RFC determination as assessed by the ALJ.

Moreover, despite some medical providers recommending that Plaintiff should attend occupational therapy, Plaintiff testified that she declined to do so because she found the recommendation to be an "insult." (Tr. 40). Plaintiff's refusal to participate in recommended occupational therapy is also inconsistent with her complaints of disabling impairments related to her memory. See, e.g., DeLuca v. Astrue, No. 10-cv-2032 (JNE/FLN), 2011 WL 2633851, at *13–14 (D. Minn. May 25, 2011) (citing Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004)), report and recommendation adopted, 2011 WL 2622384 (D. Minn. July 5, 2011) (noting that the failure to comply with prescribed medical treatment is inconsistent with complaints of disabling pain and finding that the ALJ properly discounted the claimant's complaints of disabling pain based on the claimant discontinuing recommended occupational therapy and neurorehabilitation course).

Other opinion evidence in the record also supports the RFC determination as assessed by the ALJ. On August 17, 2016, Dr. Kari Kennedy, Psy.D., as part of the initial determination of Plaintiff's application for disability benefits, opined that Plaintiff had only moderate limitations in her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, and her ability to maintain attention and concentration for extended periods of time.

(Tr. 58–59). Dr. Kennedy also opined that Plaintiff had no "significant[]" limitation in her ability to carry out very short and simple instructions; her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; her ability to sustain an ordinary routine without special supervision; her ability to work in coordination with or in proximity to others without being distracted by them; her ability to make simple work related decisions; her ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest period; her ability to interact socially; or her ability to adapt. (Tr. 58–59). Dr. Kennedy opined that Plaintiff was able to "understand, carry out and remember simple instructions; able to make judgments commensurate with functions of unskilled work; able to respond appropriately to brief supervision and interactions with coworkers and work situations; [and] able to deal with changes in a routine work setting." (Tr. 59). Dr. Kennedy further opined that Plaintiff appeared "capable of unskilled work." (Tr. 59).

As already discussed above, Plaintiff's medical records were also reviewed by state agency consultant, Dr. Mary X. Sullivan, Ph.D. (Tr. 71–72). Although Plaintiff ostensibly demonstrated a pattern of memory deficit characterized as "amnesic," Dr. Sullivan noted that this characterization as applied to Plaintiff was "not entirely true, since rate of acquisition/learning on the word-list learning task suggested that low recall was directly related to a low number of words learned over trails." (Tr. 71–72). Dr. Sullivan noted that if Plaintiff "were truly amnestic, she would have learned many more words while retaining few of them." (Tr. 72).

As part of her records review and assessment, Dr. Sullivan, like Dr. Kennedy, opined that Plaintiff had only moderate limitations in her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, and her ability to maintain attention and

concentration for extended periods of time, but no "significant[]" limitation in her ability to carry out very short and simple instructions; her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; her ability to sustain an ordinary routine without special supervision; her ability to work in coordination with or in proximity to others without being distracted by them; her ability to make simple work related decisions; her ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest period; her ability to interact socially; or her ability to adapt. (Tr. 73–74). Ultimately, Dr. Sullivan opined that Plaintiff should be able to "understand, carry out and remember simple instructions; able to make judgments commensurate with functions of unskilled work; able to respond to appropriately to brief supervision and interactions with coworkers and work situations;" and "able to deal with changes in a routine work setting." (Tr. 74).

The medical opinions of Dr. Kennedy and Dr. Sullivan are consistent with the other medical evidence in the record as a whole. Further, the medical opinions of Dr. Kennedy and Dr. Sullivan support an RFC determination as assessed by the ALJ. In fact, the medical opinions of Dr. Kennedy and Dr. Sullivan each support an RFC determination more demanding and more robust than the RFC determination as actually assessed by the ALJ.

Based on the foregoing, the Court concludes that the ALJ's residual functional capacity (RFC) determination was supported by substantial evidence in the record as a whole.

## V.  Conclusion

The Court's review of the record as a whole indicates that the ultimate decision that Plaintiff was not disabled as defined by the Social Security Administration Act during the adjudicated period was supported by substantial evidence in the record.

Specifically, on the Court's review of the record as a whole, the ALJ's decision to discount Plaintiff's subjective complaints, his RFC determination, and his decision that jobs existed in significant numbers in the national economy which Plaintiff could perform within the RFC determination were each supported by substantial evidence in the record.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.     Plaintiff's Motion for Summary Judgment, [Docket No. 10], be **DENIED**; and

2.     Defendant's Motion for Summary Judgment, [Docket No. 14], be **GRANTED**.

Dated:  July 28, 2020                                   s/Leo I. Brisbois
                                                                  Hon. Leo I. Brisbois
                                                                  United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).